IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIA F.,[1]

    Claimant,

v.

ANDREW SAUL,
Commissioner of Social Security,[2]

    Respondent.

No. 18 C 7813

Jeffrey T. Gilbert
United States Magistrate Judge

## MEMORANDUM OPINION AND ORDER

Maria F. ("Claimant") seeks review of the final decision of Respondent Andrew Saul, Commissioner of Social Security, ("Commissioner") denying Claimant's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and Title XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including final judgment. [ECF No. 7]. The parties have filed cross-motions for summary judgment [ECF Nos. 15 and 19] pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 15] is granted, and the Commissioner's Motion [ECF No. 19] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Pursuant to Internal Operating Procedure 22, the Court will identify the non-government party by using her full first name and the first initial of e last name.

[2] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25, Commissioner Saul automatically is substituted as Defendant in this case. No further action is necessary to continue this lawsuit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Claimant filed applications for SSI and DIB on October 15, 2015, alleging a disability onset date of June 26, 2015. (R. 40.) The applications initially were denied on March 17, 2016 (R. 186–89) and upon reconsideration on July 13, 2016 (R. 193–95), after which Claimant requested an administrative hearing before an administrative law judge ("ALJ"). (R. 200–01.) On November 8, 2017, Claimant, represented by counsel, appeared and testified at a hearing before ALJ Margaret A. Carey. (R. 40.) The ALJ also heard testimony from impartial vocational expert ("VE"), Thomas F. Dunleavy. (*Id.*)

On March 1, 2018, the ALJ issued her opinion and denied Claimant's application for SSI and DIB based on a finding that she was not disabled under the Act. (R. 50.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSRs").[3] 20 C.F.R. § 404.1520. Prior to step one, the ALJ noted that Claimant met the insured status requirements of the Act through December 31, 2019. (R. 40.) At step one, the ALJ found that Claimant had not engaged in any substantial gainful activity ("SGA") since the alleged onset date of June 26, 2015. (R. 42.) At step two, the ALJ found that Claimant had the severe impairments of fibromyalgia and degenerative disc disease. (*Id.*) The ALJ also found Claimant had the non-severe impairments of hypertension, mild osteopenia bilaterally in her hands, and multiple nerve sheath cysts. (R. 43.) At step three, the ALJ found that since her alleged disability onset date of June 26, 2015, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.

---

[3] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

§§ 404.1520(d), 404.1525, and 404.1526). (R. 44.) The ALJ then assessed Claimant's residual functional capacity ("RFC")[4] and concluded that she had "the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant would not speak language."

At step four, based on the RFC determination, the ALJ assessed whether Claimant could perform past relevant work as a sales clerk. (R. 49.) The ALJ concluded that Claimant's work as a sales clerk satisfied all three relevance requirements of SGA, duration, and recency necessary under SSR 82–62. (*Id.*) The ALJ then asked the VE to consider a hypothetical individual of the same age, education, work experience and RFC as Claimant. (*Id.*) The VE opined that such a hypothetical person could perform Claimant's past work. (*Id.*) Based on this, the ALJ concluded that Claimant could perform past relevant work. (*Id.*)

The Appeals Council denied Claimant's request for review on October 3, 2018, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the district court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming,

---

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

3

modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support an ALJ's decision, it will not be upheld if the ALJ did not "build an accurate and logical bridge from the evidence to her conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the ALJ's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)

### III. ANALYSIS

On appeal, Claimant asserts that the ALJ committed two reversible errors: (1) the ALJ improperly found that Claimant's symptom allegations were not credible; and (2) the ALJ's RFC assessment failed to build a logical bridge between the evidence and the ALJ's findings. [ECF No. 15], at 5–15.

#### A. Credibility Analysis

Claimant first argues that the ALJ erred in evaluating the credibility of her symptom allegations. The Court will overturn an ALJ's assessment of a claimant's symptom allegations

only if it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Despite this deference, the ALJ must provide specific reasons for her assessment that are supported by substantial evidence. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009), citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Moreover, in evaluating the claimant's allegations, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotations omitted); *see also Fisher v. Berryhill*, 760 F. App'x 471, 476 (7th Cir. 2019) (explaining that a ruling is not supported by substantial evidence if the ALJ "fails to build a logical and accurate bridge between the evidence and conclusion"). Indeed, "[w]ithout an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942; *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must [ ] explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

When evaluating a claimant's subjective symptom allegations, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations[.]" *Villano*, 556 F.3d at 562; *see* SSR 3 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016). SSR 16-3p, like former SSR 96-7p,4 requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4; *see* SSR 96-7p, 1996 WL 374186, at *1–2 (July 2, 1996).

5

Claimant alleges that she suffers from pain in her back, fingers, knees, and elbows. The Court finds the ALJ did not properly assess Claimant's allegations regarding the pain she is experiencing. Claimant states that she suffers pain to her back and has low back problems that limit the amount of weight she can carry after a history of two back surgeries. (R. 428, 433, 444, 542) She further claims that she has reaching and bending limitations because of her radiating pain, and that her impairments affect her abilities to lift, squat, sit, kneel, climb stairs, and use her hands. (R. 351, 413, 428, 433) She also claims that she has "good days and bad days" of varying pain levels, and that her pain is at its worst after walking or standing for over thirty minutes. (R. 133, 591–92.)

The ALJ determined that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 45.) For instance, the ALJ found that despite her alleged pain, Claimant was able to make simple meals, do her own shopping, ride in a car and take public transportation, handle her personal finances, read, watch television, and attend church. (*Id.*) The ALJ similarly perceived a conflict between the level of limitation stated by Claimant and the fact that she did not require an assistive device for ambulation. (*Id.*) The ALJ also found that the fact that Claimant had traveled to Mexico during the period of alleged disability undermined the credibility of Claimant's allegations. (R. 46.) The ALJ additionally found that Claimant's allegations regarding the "intensity, persistence, and limiting effects of her symptoms" were inconsistent with her medical records, noting improvement in her level of pain after physical therapy received between August 2016 and January 2017. (R. 47–48.) The ALJ referenced January 2017 medical records in which Claimant reported back pain but denied radiation or weakness and declined injections on her spine. (R. 48 (citing R. 515.))

There are several flaws or inadequacies in the ALJ's reasoning. First, the Court finds that the ALJ did not adequately substantiate her belief that Claimant's daily activities demonstrated that Claimant was capable of performing full-time work. *See Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (cautioning against placing "undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside of the home."). The ALJ erred by ignoring Claimant's statements demonstrating her limitations in performing daily activities. While Claimant can make simple meals, she only does so three times a week, only spends fifteen minutes cooking, does not use the oven or chop, and cannot stand for long. (R. 299.) Similarly, while Claimant does grocery shop, she does so only once every two weeks, and only for fifteen minutes at a time. (R. 298–301.) Because she does not address the limitations on Claimant's daily activities, the ALJ fails to build a logical bridge proving that those daily activities demonstrate that Claimant is capable of full-time work. *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("An ALJ may not ignore a claimant's limiting qualifications with regard to her daily activities.").

Second, the ALJ erred by implying that Claimant was not disabled because she did not require an assistive device for ambulation. An ALJ should not discount a claimant's credibility regarding the claimant's chronic pain merely because the claimant does not use a cane. *Case v. Colvin*, 2017 WL 346529, at *5. Furthermore, Claimant does not claim that her inability to work is due to her need to use of an assistive device for ambulation. Rather, she claimed that the pain in her low back and hands made it difficult to lift, reach, bend, squat, kneel, climb stairs, and use her hands. (R.45.)

Third, the ALJ did not adequately explain how Claimant's trip to Mexico undermines the credibility of her allegations. It is error for an ALJ to discount a claimant's credibility based on the fact that the claimant took a vacation without inquiring into what the claimant did on vacation or

7

whether their alleged disabilities limited their activities. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). The ALJ did not provide any explanation of how Claimant's ability to travel to Mexico translates into an ability to maintain employment. This is error. *Stojakovic v. Colvin*, 2015 WL 1966857, at *17 (N.D. Ill. May 1, 2015).

Fourth, the ALJ erred in discounting Claimant's credibility based on the fact that Claimant declined spinal injections without inquiring as to why Claimant declined them. An ALJ may not make negative inferences about a claimant's credibility based on the claimant's failure to seek particular treatment without inquiring into the claimant's reason for that failure. SSR 16-3p, 2016 WL 1119029, at *9–10. Claimant alleges that she did not receive injections because she preferred physical and occupational therapy. [ECF No. 15], citing R. 542–43. To reference her denial of injections without referencing this reason is an error by the ALJ.

These errors are numerous and significant enough that the Court cannot confidently say that the ALJ would have evaluated Claimant's pain allegations the same way had she not made them. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) (remanding where the court was unsure "that the ALJ would have reached the same conclusion about [the claimant's] credibility if the information he considered had been accurate"); *Allord v. Barnhart*, 455 F.3d 818, 821–22 (7th Cir. 2006) (remanding where the ALJ based his credibility determination "on a variety of considerations but three of them were mistaken" because it was speculative whether the ALJ "would have made the same determination had he not erred in these respects").

Nor can the Court say that the ALJ's errors are harmless. The VE was asked if Claimant's past work could be performed by a hypothetical individual of Claimant's age, education, and work experiences, who was capable of performing work at a light or medium level of exertion with no further restrictions (R. 137.) The VE responded that such an individual would be able to perform

the relevant past work, but that an individual limited to a sedentary level of exertion would not be able to perform the past work. (R. 137–38.) Hypotheticals posed by an ALJ to a VE must include "all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). If the ALJ had fully credited Claimant's allegations regarding her level of pain, which included claims that she was "persistently functionally limited" by her pain—the VE may have found Claimant to be unemployable. (R. 428.) Thus, remand is required. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016) (finding that the ALJ's erroneous subjective symptom assessment was not harmless and required remand because "it informed several aspects of the ALJ's findings with respect to [the claimant's] residual functional capacity and consequently her ability to perform past relevant work or to adjust to other work"); *Engstrand v. Colvin*, 788 F.3d 655, 662 (7th Cir. 2015) (finding that the ALJ's "flawed credibility finding hindered her ability to appropriately weigh other favorable evidence," including the opinion of the claimant's treating physician).

In sum, the ALJ failed to "build an accurate and logical bridge between the evidence" and her conclusion about the credibility of Claimant's allegations regarding her pain. *Shramek*, 226 F.3d at 811 (internal quotations omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. Although the ALJ was not required to accept completely Claimant's allegations about her level of pain without question, the foundation underlying her current assessment is inadequate. On remand, the ALJ should reassess all of Claimant's subjective symptom allegations in accordance with SSR 16-3p and 20 C.F.R. § 404.1529. The ALJ should then articulate how she evaluates the full range of medical and testimonial evidence and explain the logical bridge from the evidence to her conclusions about Claimant's subjective symptom allegations.

## B. Review of Medical Records

Additionally, Claimant argues that the ALJ cherry-picked Claimant's medical records and as a result, failed to build an accurate and logical bridge between the medical evidence and her conclusion that Claimant's pain had improved to the point that she was no longer disabled. The Court agrees. The ALJ relied on reports of improvement in Claimant's pain level, while ignoring contemporaneous statements about the severity of her pain and how it limited her daily functioning. For instance, the ALJ writes that "[b]y December 2015, [Claimant] reported some improvement in her symptoms," but did not reference the fact that Claimant's relief was described as "incremental" and "incomplete" in December 2105. R. 46, 433. Similarly, for Claimant's February 2016 medical records, the ALJ noted that Claimant "reported her pain only in the 4-5 range" on a ten-point scale, but not the fact that on those dates Claimant reported that, while the absolute magnitude of her pain had decreased, she still had pain every day, with some days being worse than others, and that she was "persistently functionally limited" by her pain. (R. 47, 428.) Despite improvements in her pain, Claimant also indicated that she experienced increased pain after walking or standing for over thirty minutes. (R. 591–93.) The relevant question is not whether the Claimant has experienced improvement in her pain level, but whether her pain has improved to a sufficient degree for her to no longer be disabled. *Murphy*, 759 F.3d at 819. The ALJ erred in failing to discuss this question.

In addition to relying too heavily on reports of improvement in Claimant's pain, the ALJ ignored entire portions of Claimant's medical records, such as her physical therapy records. Claimant began physical therapy for low back and neck pain in October 2016 and completed fourteen sessions of physical therapy. (R. 651–60, 591–627.) From July to September 2017, Claimant attended an additional eleven physical therapy sessions. (R. 570–90, 645–50.) Finally,

she attended six sessions of occupational therapy from July to August 2017. (R. 555–69, 638–44.) While the ALJ noted that Claimant attended physical therapy, she did not discuss any of the records from the physical therapy other than to note that the physical therapy occurred. (R. 46–47.)

While the ALJ need not consider every piece of evidence, she may not ignore entire lines of evidence. *See Arnett v. Astrue*, 676 F.3d 586, 592 (2012). These sets of physical and occupational therapy records are significant to Claimant's allegations regarding the extent of her disability. The records support Claimant's allegations about her difficulties reaching, bending, squatting, sitting, kneeling, climbing stairs, using her hands, walking, and standing. (R. 45, 128, 302.) Social Security regulations require that an RFC assessment be "based on all relevant evidence in the record." *Murphy*, 759 F.3d at 817. Because the ALJ did not discuss these records, it is not clear to the Court that the ALJ took information regarding Claimant's physical and occupational therapy into account. On remand, the ALJ ought to give consideration to Claimant's physical and occupational therapy records beyond mere acknowledgement that Claimant had received such therapy.

Finally, the ALJ also failed to discuss Claimant's most recent medical records. The most recent records referenced by the ALJ in her opinion were from January 2017. (R. 48.) However, Claimant's medical records also show a physical examination on June 5, 2017 reflecting tender points in Claimant's bilateral anterior chest, bilateral elbows, bilateral pes anserine bursa, and right PSIS; tenderness to palpitation of her bilateral hands; decreased range of motion of her bilateral wrists, elbows, shoulders, and knees; synovial thickening of her left wrist; and bilateral crepitus of her knees. (R. 635–36.)

The ALJ asserted that Claimant's "latest examination found no abnormalities." (R. 48.) Because the most recent records cited by the ALJ were from January 2017, it seems that the ALJ

did not consider the June 2017 records. This is particularly significant because the two State agency consultants who reviewed the record did so on March 17, 2016 and on June 29, 2016. (R. 141–49, 151–61.) This means that the June 2017 records, which the ALJ ignored, also were not reviewed by a medical expert. When "new, and potential decisive findings" are submitted to the ALJ after a non-examining reviewer has reviewed the file for SSA, the ALJ should seek an updated opinion from a medical expert. *Stage v. Colvin*, 812 F.3d 1121, 1125–26 (7th Cir. 2016). The ALJ failed to do so in this case. When an ALJ makes independent decisions about which medical evidence is and is not relevant, and does so without the review of a medical expert, that ALJ risks "succumb[ing] to the temptation to play doctor and make their own independent medical findings." *Rohan v. Charter*, 98 F.3d 966, 976 (7th Cir. 1996).

In sum, the Court finds that the ALJ engaged in cherry-picking with regard to her evaluation of Claimant's medical records. An ALJ may not "selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability. *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018). In that the ALJ in this case relied too heavily on reports of Claimant's improvement, failed to discuss entire lines of relevant evidence, and ignored the most recent medical records without subjecting them to medical review, the ALJ was in error.

Courts have found that cherry-picking of the records can lead to an even more flawed conclusion when dealing with a Claimant who suffers from fibromyalgia. Fibromyalgia "often produce[s] pain and other symptoms out of proportion to the objective medical evidence." *Robinson v. Berryhill*, 2017 WL 2215022, at *3. Because it is common for a person with fibromyalgia to have "bad days and good days," giving too strong weight to one-time examinations

can lead an ALJ to a conclusion that does not accurately reflect the degree of a claimant's disability. *Buttaccio v. Berryhill*, 2017 WL 3895566, at *7 (N.D. Ill. Sept. 6, 2017).

The Court expresses no opinion about the decision to be made on remand but encourages the ALJ to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions.").

### C. Other Issues

In the Commissioner's Memorandum in Support of Motion for Summary Judgment, the Commissioner raises an additional argument, arguing that Claimant had applied for and received unemployment benefits during her period of alleged disability. [ECF No. 18], at 8-9 (citing R. 124). The Commissioner argues that, in order to receive unemployment benefits, Claimant would have had to certify that she was physically and mentally able to work a full-time job, and further argues that this is an inconsistency that ought to weigh against Claimant when evaluating her subjective symptoms. *Id.* While this argument may provide support for a finding by the ALJ that Claimant is not disabled, the ALJ did not rely on this fact in her opinion or find that it represented an inconsistency. *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (holding that a claimant's decision to apply for unemployment benefits may play a role in objecting credibility of claimant's subjective complaints); *see also Van Meter v. Astrue*, 2010 WL 5232931 (N.D. Ill. Dec. 16, 2010). The Court, therefore, may not consider this argument from the Commissioner. *See S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Stewart*, 561 F.3d at 684 (in reviewing an ALJ's determinations, "a court must confine itself to the reasons supplied by the ALJ").

## IV. CONCLUSION

For the reasons stated in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 15] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 19] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 26, 2019